*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* R. L. BERNINGER, Minor.

UNPUBLISHED
April 21, 2022

No. 358169
St. Clair Circuit Court
Family Division
LC No. 21-000012-NA

Before: JANSEN, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor child pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (b)(*iii*), (g), (j), and (k)(*ii*).[1] For the reasons discussed below, we affirm.

## I. FACTUAL BACKGROUND

This case arises from respondent's sexual abuse of his stepdaughter, RLK, who is the half-sister of the child at issue in this appeal (the "minor child"). Respondent's wife ("the mother") is the mother of both RLK and the minor child.[2] Respondent is the minor child's biological father. RLK has a different father. Respondent and the mother married when RLK was three years old. In 2018, RLK disclosed that respondent had been sexually abusing her for several years, but she subsequently recanted her allegations. In 2021, RLK again disclosed that respondent had been sexually abusing her. Petitioner sought termination of respondent's parental rights to the minor child in an original petition. Respondent denied the allegations and, following a jury trial, the trial court exercised jurisdiction over the minor child. After a termination hearing, the trial court terminated respondent's parental rights to the minor child. This appeal followed.

## II. JURISDICTION

---

[1] The trial court did not terminate the parental rights of the child's mother, who is not a party to this appeal.

[2] The trial court terminated the mother's parental rights to RLK.

Respondent first argues that there was insufficient evidence presented at the jury trial to support the trial court's exercise of jurisdiction over the minor child pursuant to MCL 712A.2(b). We disagree.

This Court reviews a jury's verdict regarding jurisdiction over a child to determine if a preponderance of the evidence satisfied the statutory requirements of MCL 712A.2(b). See *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). This Court must give due deference to the jurors' findings based on their first-hand ability to assess witness credibility. See *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020).

Child protective proceedings are generally divided into an adjudicative phase and a dispositional phase. *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). "The adjudicative phase determines whether the . . . court may exercise jurisdiction over the child. If the court acquires jurisdiction, the dispositional phase determines what action, if any, will be taken on behalf of the child." *Id*. A jury may be demanded in the adjudicative phase, but not at the dispositional hearing. *Id*.

"Child protective proceedings are initiated when a petition is filed in the trial court that contains facts constituting an offense against a child under MCL 712A.2(b) of the juvenile code, ML 712A.1 *et seq*." *In re Long*, 326 Mich App 455, 459; 927 NW2d 724 (2018). "To acquire jurisdiction, the factfinder must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2." *In re Brock*, 442 Mich at 108-109.

The jury returned a verdict finding that petitioner proved that the minor child "is subject to a substantial risk of harm to her mental well-being[,]" and the minor child's "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of [respondent], is an unfit place for [the minor child] to live in." MCL 712A.2(b)(1) and (2) provide for jurisdiction over a child under the following circumstances:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

RLK's testimony was sufficient to establish both of these grounds by a preponderance of the evidence. In particular, RLK testified that respondent was like a father to her and that he had sexually abused her since she was less than 11 years old. She stated that respondent used promises that she would not get in trouble and offered her gifts to perpetrate the sexual abuse. While there was no evidence that respondent sexually abused the minor child, "[t]he doctrine of anticipatory

neglect recognizes that [h]ow a parent treats one child is certainly *probative* of how that parent may treat other children." *In re Kellogg*, 331 Mich App at 259 (quotation marks and citation omitted). "Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child and application of the doctrine of anticipatory neglect." *Id.* (quotation marks and citation omitted). Even though RLK was respondent's stepdaughter, he had been raising her as if she were his child, and therefore, the doctrine of anticipatory neglect or abuse is applicable. See *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). Thus, the evidence supported the jury's findings that the minor child was at risk of harm, both physical and mental, and that respondent's home was an unfit place to live because of this sexual abuse and the risk that he would sexually abuse the minor child in the future, particularly with RLK no longer in the home.

Although respondent complains that there was no corroborating evidence, such as a medical examination, photographs, video evidence, eyewitness testimony, clothing or sheets, or DNA tests, corroborating evidence is not required. A victim's testimony alone can establish criminal sexual conduct. See *People v Bailey*, 310 Mich App 703, 713-714; 873 NW2d 855 (2015). Moreover, the detective involved in this case explained that there was not likely to be any DNA evidence because the last assault occurred a month before RLK's disclosure in January 2021. In addition, evidence was not likely to be found at the house because respondent was seen cleaning the house and removing a DVR player.

Respondent also suggests that RLK was not credible because she had previously recanted allegations of sexual abuse against him in 2018 and, as in 2018, her current allegations were made after the mother took away her phone. This Court, however, must defer to the jury's credibility determinations. See *In re Kellogg*, 331 Mich App at 253. Moreover, evidence was presented from which the jury could have concluded that there was a reasonable explanation for why RLK previously recanted—she was physically and verbally abused and then threatened at knifepoint by the mother. In 2021, when RLK was not forced to return to the mother, she did not recant her allegations. The evidence was sufficient to enable the jury to find that jurisdictional grounds under both MCL 712A.2(b)(1) and (2) were established by a preponderance of the evidence. Accordingly, the trial court did not err by exercising jurisdiction over the minor child.

## III. STATUTORY GROUNDS FOR TERMINATION

Next, respondent argues that the trial court clearly erred by finding that statutory grounds existed to terminate his parental rights to the minor child. We disagree.

"To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 635; 853 NW2d 459 (2014) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014) (citations omitted). "A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014). This Court reviews de novo questions of statutory construction. *In re MKK*, 286 Mich App 546, 556; 781 NW2d 132 (2009).

MCR 3.977(E) permits a trial court to order termination of a respondent's parental rights at the initial dispositional hearing if:

> (3) . . . the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:
>
> (a) are true, and
>
> (b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (l), or (m)[.]

The trial court found that RLK's testimony before the jury was true and that grounds for termination of respondent's parental rights were established pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (b)(*iii*), (g), (j), and (k)(*ii*), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.
>
> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.
>
> (*iii*) A nonparent adult's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse by the nonparent adult in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

* * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

The trial court did not clearly err by finding that at least one of these grounds is established by clear and convincing evidence. In particular, RLK testified that respondent had sexually abused her since she was less than 11 years old. She described several instances of the sexual abuse in detail and explained how respondent made promises that she would not be in trouble and gave her gifts in exchange for her compliance with his requests. RLK initially disclosed the abuse in 2018, but explained that she was forced to recant by the mother. RLK's testimony was sufficient to establish that a sibling of the minor child suffered sexual abuse, respondent's act caused the sexual abuse, and there was a reasonable likelihood that the minor child would suffer from injury or abuse in the foreseeable future if placed in respondent's home, thereby supporting termination under MCL 712A.19b(3)(b)(*i*). As discussed earlier, the doctrine of anticipatory neglect supports the finding that the minor child is at risk of injury or abuse.

The trial court also did not clearly err by finding, on the basis of RLK's testimony and the doctrine of anticipatory neglect, that the evidence supports termination under MCL 712A.19b(3)(g) because respondent failed to provide proper care or custody for the minor child and there is no reasonable expectation that he will be able to provide proper care and custody within a reasonable time considering the child's age. Similarly, the trial court did not clearly err by finding, under MCL 712A.19b(3)(j), that there is a reasonable likelihood, based on the conduct or capacity of respondent, that the minor child will be harmed if she is returned to respondent's home, and, under MCL 712A.19b(3)(k)(*ii*), that respondent abused a sibling of the minor child and the abuse included criminal sexual conduct involving penetration.

We agree, however, that MCL 712A.19b(3)(b)(*ii*) is not established in this case. The trial court found that respondent had the opportunity to prevent the sexual abuse by not perpetrating the abuse. However, because MCL 712A.19b(3)(b)(*i*) applies when a parent causes sexual abuse, the Legislature did not intend § 19b(3)(b)(*ii*) to also apply to the parent who commits the abuse. See *In re LaFrance*, 306 Mich App at 725 ("[S]ubparagraph (*ii*) is intended to address the parent who, while not the abuser, failed to protect the child from the other parent or nonparent adult who is an abuser.") Further, we are not persuaded that there was clear and convincing evidence that respondent failed to protect RLK or the minor child from the mother's abuse. RLK testified that the mother hit her with a belt, her hands, and a wooden paddle. She also testified that the mother hit the minor child with the wooden paddle. She testified that respondent would try to calm down the mother, but there was no specific evidence that respondent was aware of the physical abuse and failed to protect RLK or the minor child. At most, RLK testified that, on one occasion,

-5-

respondent told RLK that if she complied with his sexual requests, she would not be in trouble for breaking a plate, but there was no specific reference to the mother. Thus, there was not clear and convincing evidence to support this statutory ground for termination.

Similarly, MCL 712A.19b(3)(b)(*iii*) was not established because a nonparent adult did not cause the abuse in this case. A "nonparent adult" is defined as

> a person who is 18 years of age or older and who, regardless of the person's domicile, meets all of the following criteria in relation to a child:
>
> > (*i*) Has substantial and regular contact with the child.
> >
> > (*ii*) Has a close personal relationship with the child's parent or with a person responsible for the child's health or welfare.
> >
> > (*iii*) Is not the child's parent or a person otherwise related to the child by blood or affinity to the third degree. [MCL 722.622(v)(*i*)-(*iii*).]

The trial court found that respondent was a nonparent adult to RLK. However, respondent is related to RLK by affinity because respondent married RLK's mother. See *People v Armstrong*, 212 Mich App 121, 128; 536 NW2d 789 (1995) (stating that "[t]he common and ordinary meaning of affinity is marriage"). Thus, this statutory ground for termination is not applicable.

Although the trial court erroneously relied on two statutory grounds for termination, the errors are harmless because the trial court did not clearly err by finding that three other statutory grounds were established by clear and convincing evidence, and "only one statutory ground need be proved to support the termination of a parent's parental rights." *In re Gonzales/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015).

Respondent argues that the evidence did not rise to the level of clear and convincing evidence because of the lack of corroborating physical evidence, RLK's prior recantation, and RLK's untruthfulness about her interactions with her therapist. Again, however, corroborating physical evidence is not required to establish criminal sexual conduct, and the trial court found RLK's testimony to be credible. "It is not for this Court to displace the trial court's credibility determination." *In re HRC*, 286 Mich App 444, 460; 781 NW2d 105 (2009). The trial court found that RLK's explanation for recanting—that she was forced to do so by the mother—was credible. In addition, while the trial court did not expressly address the testimony of RLK's therapist or RLK's best friend, it found RLK credible despite the conflicting testimony of her therapist regarding whether RLK was ever alone during therapy, the testimony from RLK's friend that RLK said she was a virgin, and the testimony that RLK had been diagnosed with Oppositional Defiance Disorder. This Court must defer to the trial court's credibility determination. The trial court did not clearly err by finding that at least one statutory ground for termination of respondent's parental rights was established.

## IV. BEST INTERESTS

Finally, respondent argues that termination of his parental rights was not in the minor child's best interests. We disagree.

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713, citing MCL 712A.19b(5). This Court reviews "for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App at 713.

In determining a child's best interests, the trial court must weigh all of the evidence available. *Id.* As explained in *In re White*, the trial court should consider a wide variety of factors, including:

[T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*Id.* at 713-714 (quotation marks and citations omitted).]

Respondent argues that there was overwhelming evidence that he had a strong bond with the minor child and termination of his parental rights was not in the minor child's best interests given that bond, the fact that he was never criminally convicted, the lack of corroborating and physical evidence, and RLK's prior recantation. The trial court acknowledged that respondent had a bond with the minor child, and that finding is not clearly erroneous. Several of respondent's family members and friends testified regarding the bond between respondent and the minor child and the fact that they never suspected any abuse. Two family member witnesses also offered their opinions that termination of respondent's parental rights was not in the minor child's best interests and she should be with her parents.

Nonetheless, the trial court did not clearly err by finding that any bond is strongly outweighed by the evidence that respondent sexually abused RLK and the impact of that abuse on the minor child. The trial court also did not clearly err by finding that it is in the minor child's best interests to be free from abuse and that the minor child was at risk of harm in respondent's care. The fact that respondent has not been criminally convicted does not weigh against termination, particularly when criminal charges were still pending. As already explained, respondent's other arguments regarding the lack of physical or corroborating evidence and RLK's prior recantation are not persuasive. Considering the record as a whole, the trial court did not clearly err by finding that termination of respondent's parental rights was in the minor child's best interests.

## V. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Michael J. Riordan